**UNITED STATES COURT OF APPEALS FOR THE SECOND CIRCUIT**
Thurgood Marshall U.S. Courthouse   40 Foley Square, New York, NY 10007 Telephone: 212-857-8500

MOTION INFORMATION STATEMENT

**Docket Number(s):** 13-4791-cv

**Caption [use short title]**

**Motion for:** Unopposed Motion to Seal One Volume of the Joint Appendix

In re: Vitamin C Antitrust Litigation

Set forth below precise, complete statement of relief sought:

Defendants-Appellants request leave to file the unredacted version of the Joint Appendix containing excerpts from the Expert Report of Dr. Lawrence Wu under seal.

**MOVING PARTY:** Defendants-Appellants Hebei Welcome Pharmaceutical Co., Ltd., et al.
**OPPOSING PARTY:** Plaintiffs-Appellees Animal Science Products, Inc., et al.

☐ Plaintiff   ☐ Defendant
✔ Appellant/Petitioner   ☐ Appellee/Respondent

**MOVING ATTORNEY:** Jonathan M. Jacobson
**OPPOSING ATTORNEY:** William A. Isaacson
[name of attorney, with firm, address, phone number and e-mail]

Wilson Sonsini Goodrich & Rosati, P.C.
1301 Avenue of the Americas, 40th Floor, New York, NY 10019
jjacobson@wsgr.com; (212) 999-5800

Boies, Schiller & Flexner L.L.P.
5301 Wisconsin Avenue, N.W., Suite 800, Washington, DC 20015
wisaacson@bsfllp.com; (202) 237-5607

**Court-Judge/Agency appealed from:** Hon. Brian M. Cogan, Eastern District of New York

**Please check appropriate boxes:**

Has movant notified opposing counsel (required by Local Rule 27.1):
✔ Yes   ☐ No (explain):

Opposing counsel's position on motion:
✔ Unopposed   ☐ Opposed   ☐ Don't Know

Does opposing counsel intend to file a response:
☐ Yes   ✔ No   ☐ Don't Know

**FOR EMERGENCY MOTIONS, MOTIONS FOR STAYS AND INJUNCTIONS PENDING APPEAL:**
Has request for relief been made below? ☐ Yes ☐ No
Has this relief been previously sought in this Court? ☐ Yes ☐ No
Requested return date and explanation of emergency:

Is oral argument on motion requested?   ☐ Yes ✔ No   (requests for oral argument will not necessarily be granted)

Has argument date of appeal been set?   ☐ Yes ✔ No   If yes, enter date:

**Signature of Moving Attorney:**
s/ Jonathan M. Jacobson   **Date:** 07/21/2014   **Service by:** ✔ CM/ECF   ☐ Other [Attach proof of service]

Form T-1080 (rev. 12-13)

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

|  |  |
|---|---|
| IN RE VITAMIN C ANTITRUST LITIGATION | ) ) ) ) |
| Animal Science Products, Inc., *et al.*, <br><br> *Plaintiffs-Appellees*, <br><br> v. <br><br> Hebei Welcome Pharmaceutical Co. Ltd., *et al*., <br><br> *Defendants-Appellants*. | ) ) ) ) ) ) ) ) ) ) ) ) ) |

No. 13-4791

**UNOPPOSED MOTION TO SEAL ONE VOLUME OF THE JOINT APPENDIX**

Defendants-Appellants Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp. ("Appellants") respectfully move the Court for an order permitting Appellants to file under seal an unredacted version of the volume of the Joint Appendix containing excerpts from the Expert Report of Dr. Lawrence Wu (hereinafter, the "Confidential Appendix Volume"). Counsel for Plaintiffs-Appellees do not oppose this motion.

The Confidential Appendix Volume contains excerpts from the Expert Report of Dr. Lawrence Wu ("Wu Report") originally filed under seal in the District Court. *See* Dkt.534 Ex.6; Declaration of Daniel P. Weick in Support of Motion to Seal ("Weick Decl.") ¶ 2. These excerpts contain confidential information for three companies—specifically, information on the volume of certain types of shipments of vitamin C. Weick Decl. ¶ 3. Appellants propose to redact that information, and a proposed redacted version of the document at issue is attached as to this motion. *Id*. ¶ 4 & Ex. A.

As explained below, the material proposed to be redacted is both competitively sensitive to the companies whose information is disclosed in the Wu Report excerpts and unnecessary for the public to understand any judicial decision that might rely on it. Appellants therefore respectfully request that this Court permit them to file the unredacted version of the Confidential Appendix Volume under seal.

## ARGUMENT

This Court follows a three-step process to determine whether a document may be sealed. *Lugosch v. Pyramid Co. of Onondaga*, 435 F.3d 110, 119 (2d Cir. 2006). First, the Court determines whether the document is "relevant to the performance of the judicial function and useful in the judicial process"; if so, then it is a judicial document and the public presumptively has the right to access the document. *Id.* (quoting *United States v. Amodeo*, 44 F.3d 141, 145 (2d Cir. 1995) ("*Amodeo I*")). Second, the Court assesses the weight of the presumption of public access by examining "the role of the material at issue in the exercise of Article III judicial power and the resultant value of such information to those monitoring the federal courts." *United States v. Amodeo*, 71 F.3d 1044, 1049 (2d Cir. 1995) ("*Amodeo II*"). Finally, the Court balances the right of public access against the considerations that favor the sealing of the document. *Lugosch*, 435 F.3d at 120.

Sealing of a document is particularly appropriate when the document at issue contains "business information that might harm a litigant's competitive standing." *Nixon v. Warner Commc'ns, Inc.*, 435 U.S. 589, 598 (1978); *see also Apple Inc. v. Samsung Elecs. Co.*, 727 F.3d 1214, 1221 (Fed. Cir. 2013) ("One factor that weighs in favor of sealing documents is when the release of the documents will cause competitive harm to a business."). The "business information need not be a 'trade secret' in order to remain sealed or redacted[.]" *E.E.O.C. v.*

2

*Kelley Drye & Warren LLP*, No. 10 Civ. 655 (LTS) (MHD), 2012 WL 691545, at *3 (S.D.N.Y. Mar. 2, 2012) (internal marks and citation omitted). Additionally, appellate courts favor the sealing of documents that were also filed under seal in the lower court. *See, e.g.*, *C.R. Bard, Inc. v. Liberty Mut. Ins. Co.*, 473 Fed. Appx. 128, 135 n.11 (3d Cir. 2012) (sealing unredacted appellate brief and documents containing "highly sensitive proprietary and confidential information" that were filed under seal in the district court).

Applying these standards, this Court should permit Appellants to file the unredacted Confidential Appendix Volume under seal. The portion of the Wu Report included in the Confidential Appendix Volume is a judicial document, as Appellants are asking the Court to rely on it in support of their argument that the damages award should be reduced. *See* Appellants-Br.61. But the sole information Appellants request the Court to rely upon is the difference between the damages calculations offered by Appellees' expert if the contested sales are included in or excluded from the damages award. The public interest is thus solely in those numbers, which will remain unredacted, not in the material proposed to be redacted.

By contrast, substantial considerations support sealing the information proposed to be redacted. The Wu Report excerpts contain confidential sales volume information for three companies that will place them at a competitive disadvantage if publicly disclosed. Weick Decl. ¶ 3. That information is the type of information that courts in this Circuit routinely allow to be kept under seal. *See, e.g.*, *In re Zyprexa Injunction*, 474 F. Supp. 2d 385, 421-22 (E.D.N.Y. 2007) (finding that evidence containing "commercial information of defendant . . . has the potential to impinge on the company's privacy and property rights and inflict commercial harm."), *aff'd sub nom. Eli Lilly & Co. v. Gottstein*, 617 F.3d 186 (2d Cir. 2010); *Cumberland Packing Corp. v. Monsanto Co.*, 184 F.R.D. 504, 506 (E.D.N.Y. 1999)

("Documents falling into categories commonly sealed are those containing . . . revenue information, pricing information, and the like."); *Encyclopedia Brown Prods., Ltd. v. Home Box Office, Inc.*, 26 F. Supp. 2d 606, 614 (S.D.N.Y. 1998) (sealing HBO's confidential business records, including, *inter alia*, "volume of subscribership[.]"); *Druck Corp. v. The Macro Fund (U.S.) Ltd.*, No. Civ. 6164 (AGS) (DFE), 2002 WL 31415699, at *1 (S.D.N.Y. Oct. 28, 2002) (directing motion papers to be filed under seal "to the extent they identify any non-party investor[.]").

Further, the exhibit containing the Wu Report excerpts was filed under seal in the District Court, which supports a sealed filing in this Court. *C.R. Bard*, 473 Fed. Appx. at 135 n.11. And counsel for Appellees does not oppose this Motion, which further favors sealing. *See, e.g.*, *United States v. E.V.*, 503 Fed. Appx. 627, 628 (10th Cir. 2012); *McClenahan v. Metro. Life Ins. Co.*, 416 Fed. Appx. 693, 699 n.2 (10th Cir. 2011).

An unredacted copy of the Wu Report excerpts is not necessary for the public to understand any judicial decision. The damages figures at issue remain unredacted. *See* Weick Decl. Ex. A. Since the proposed redactions are tailored to protect legitimate confidentiality interests without depriving the public of the information relevant to any prospective judicial decision, the interest in maintaining the confidentiality of the redacted portions of the document outweighs the public's interest in obtaining access to it. A sealed filing is thus appropriate. *See Lugosch*, 435 F.3d at 126.

## CONCLUSION

Appellants' motion to file the unredacted version of the Confidential Appendix Volume under seal should be granted.

Dated: July 21, 2014 	 Respectfully submitted,

WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION

s/ Jonathan M. Jacobson

Jonathan M. Jacobson
Daniel P. Weick
Justin A. Cohen
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: jjacobson@wsgr.com

Scott A. Sher
Bradley T. Tennis
1700 K Street N.W.
Fifth Floor
Washington, D.C. 20006
Telephone: (202) 973-8800
Facsimile: (202) 973-8899
Email: ssher@wsgr.com

*Attorneys for Defendants-Appellants Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp.*

## CERTIFICATE OF SERVICE

I, Jonathan M. Jacobson, hereby certify that I caused a true and correct copy of the foregoing MOTION TO SEAL ONE VOLUME OF THE JOINT APPENDIX to be served on all counsel of record via CM/ECF on this 21st day of July 2014.

Dated: July 21, 2014

s/ Jonathan M. Jacobson
Jonathan M. Jacobson

IN THE UNITED STATES COURT OF APPEALS
FOR THE SECOND CIRCUIT

|  |  |
|---|---|
| IN RE VITAMIN C <br> ANTITRUST LITIGATION | ) <br> ) <br> ) <br> ) |
| Animal Science Products, Inc., *et al.*, <br><br> *Plaintiffs-Appellees*, <br><br> v. <br><br> Hebei Welcome Pharmaceutical Co. Ltd., *et al*., <br><br> *Defendants-Appellants.* | ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) <br> ) | No. 13-4791 |

### DECLARATION OF DANIEL P. WEICK IN SUPPORT OF DEFENDANTS-APPELLANTS' UNOPPOSED MOTION TO SEAL ONE VOLUME OF THE JOINT APPENDIX

I, Daniel P. Weick, declare as follows:

1. I am an Associate with the law firm of Wilson Sonsini Goodrich & Rosati, P.C. ("WSGR"), counsel of record in this matter for Defendants-Appellants Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp. ("Appellants"). I am duly licensed to practice law in the State of New York and admitted to practice before this Court. I make this declaration in support of Appellants' Motion to Seal One Volume of the Joint Appendix. If called upon, I could provide the following testimony based on personal knowledge, my review of the files of this case, or my conversations with colleagues or opposing counsel.

2. Certain excerpts from the Expert Report of Dr. Lawrence Wu ("Wu Report") were filed under seal in the District Court as Exhibit 6 to the motion filed under the docket number 534. Appellants rely on this document for certain information relevant to their arguments for reduction of the damages award below.

3. The Wu Report excerpts contain certain sales volume information. The companies whose information is reflected in the Wu Report excerpts believe the information continues to be competitively sensitive and have requested that it be maintained under seal.

4. Attached as Exhibit A is a true and correct copy of the redacted excerpts of the Wu Report. All three companies whose information is reflected in the Wu Report excerpts approve of the proposed redactions, and Appellees do not object to them.

I declare under penalty of perjury that the foregoing is true and correct to the best of my knowledge.

Dated: July 21, 2014    s/ Daniel P. Weick

Daniel P. Weick
WILSON SONSINI GOODRICH & ROSATI
PROFESSIONAL CORPORATION
1301 Avenue of the Americas, 40th Floor
New York, New York 10019
Telephone: (212) 999-5800
Facsimile: (212) 999-5899
Email: dweick@wsgr.com

*Attorneys for Defendants-Appellants Hebei Welcome Pharmaceutical Co., Ltd. and North China Pharmaceutical Group Corp.*

**CERTIFICATE OF SERVICE**

I, Jonathan M. Jacobson, hereby certify that I caused a true and correct copy of the foregoing DECLARATION OF DANIEL P. WEICK IN SUPPORT OF APPELLANTS' UNOPPOSED MOTION TO SEAL ONE VOLUME OF THE JOINT APPENDIX to be served on all counsel of record via CM/ECF on this 21st day of July 2014.

Dated: July 21, 2014                    s/ Jonathan M. Jacobson
                                        Jonathan M. Jacobson

3

# Exhibit A

# Exhibit 6

UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK

| | |
|---|---|
| IN RE: VITAMIN C ANTITRUST LITIGATION | 06-MD-1738 (BMC) (JO) |

**EXPERT REPORT OF
LAWRENCE WU**

June 29, 2012

## I. INTRODUCTION

### A. Qualifications and Experience

1. I am an economist and Senior Vice President at NERA Economic Consulting. I also am currently a Visiting Scholar at the Stanford Institute for Economic Policy Research at Stanford University. I received my B.A. from Stanford University and my Ph.D. from the University of Chicago, Graduate School of Business. Prior to joining NERA, I was a staff economist in the Bureau of Economics at the Federal Trade Commission (FTC). At the FTC, I analyzed the competitive effects of numerous proposed mergers and a variety of potentially anticompetitive conduct.

2. I have analyzed and calculated damages in connection with alleged price fixing. I also have analyzed the competitive implications of mergers and acquisitions, as well as a broad range of business practices in many retail, manufacturing, and service industries. I have provided written and oral expert testimony on numerous occasions, which include testimony in

clauses. Removing the ▮▮▮▮▮▮ kilograms of vitamin C sold by parties not named as defendants in this matter further reduces Dr. Bernheim's damage number from $46.8 million to $39.4 million.

115. I have also been instructed by counsel to exclude sales that were made to foreign purchasers from my analysis. Based on a review of ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contracts,[71] these foreign sales comprise ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ kilograms of vitamin C, respectively.[72] Removing these sales to purchasers located outside of the United States further reduces Dr. Bernheim's damage number from $39.4 to $28.8 million.[73]

## VI. MY ANALYSIS OF THE CLAIMED DAMAGES

### A. Overview of My Methodology

116. To test Dr. Bernheim's model of damages and solely for purposes of testing his model, I use the same approach as Dr. Bernheim used, but apply various corrections to address the fundamental flaws with his approach noted above. Thus, in this report, I will assume and use

---

[71] To identify foreign sales not subject to arbitration clauses, my staff reviewed ▮▮▮▮▮▮▮ contracts following the methodology set forth in the Expert Report of Philip J. Innes. Specifically, my staff reviewed all of ▮▮▮▮▮▮▮ invoices and determined whether the purchaser listed on the invoice is located outside of the United States. They then examined the sales contract associated with each invoice and excluded any invoice associated with a sales contract that contained an arbitration clause. ▮▮▮▮▮▮▮ counsel reviewed ▮▮▮▮▮▮▮ contracts and identified sales subject to arbitration and additional sales to purchases outside the United States. My staff has reviewed a sample of ▮▮▮▮▮▮▮ contracts and confirmed that ▮▮▮▮▮▮▮ review is appropriate. ▮▮▮ provided a list of all their purchasers outside of the United States. Using this list, I identified ▮▮▮▮ sales that were to purchasers outside of the United States that were not subject to arbitration clauses. My staff similarly has reviewed a sample of ▮▮▮▮ contracts to confirm that this methodology properly identifies ▮▮▮▮ sales to purchasers outside of the United States that were not subject to arbitration clauses.

[72] For certain months, the additional sales not subject to damages identified in ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮ contracts are greater than the sales that Dr. Bernheim identifies as subject to damages. This is because Dr. Bernheim relies on annual Chinese customs data found in defendant documents for ▮▮▮▮▮▮▮▮▮▮▮ and for Hebei in 2001. To calculate the monthly sales subject to damages for ▮▮▮▮▮▮▮▮▮▮▮▮▮ in 2001, Dr. Bernheim divides the annual sales reported in customs data by twelve. Therefore, if sales are largely concentrated in one month, additional sales not subject to damages identified in a manufacturer's contracts can be larger than average monthly sales for that manufacturer. In months in which such sales for a manufacturer are larger than the average monthly sales for that manufacturer, I have taken a conservative approach and assumed that sales subject to damages for that manufacturer and month are zero.

[73] Although these additional sales not subject to damages should be excluded in a calculation of damages, it should be noted that if sales to foreign purchases and sales by "unnamed co-conspirators," were to be included in a calculation of damages, I find that estimated damages based on my model—which corrects a number of fundamental flaws with Dr. Bernheim's model—would be no more than $2.5 million. This is only $1.2 million more than the $1.3 million of estimated damages that I find when I calculate damages on the correct sales quantity.

38